# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Mary Roe 1818,<br><br>     Plaintiff,<br><br>v.<br><br>The Bishop of Charleston, a Corporation Sole, and The Bishop of the Diocese of Charleston, In His Official Capacity,<br><br>     Defendants. | Civil Action No. 2:21-cv-00020-RMG<br><br>**ORDER AND OPINION** |

Before the Court are three motions to compel filed by Plaintiff. (Dkt. Nos. 38, 39, and 40). For the reasons set forth below, the Court grants Plaintiff's motion to compel discovery responses to Plaintiff's Second Requests for Production of Documents, (Dkt. No. 38), grants in part and denies in part Plaintiff's motion to compel interrogatory responses, (Dkt. No. 39), and denies Plaintiff's motion to compel responses to requests for admission, (Dkt. No. 40).

**Background**

Plaintiff alleges that between 1961 and 1966 Frederick Austin McLean, then a priest under "the direct supervision, employ and control" of Defendants, sexually assaulted her. McLean died in 2010. Plaintiff brings various claims against Defendants including, *inter alia*, civil conspiracy. *See generally* (Dkt. No. 1-1).

On August 27, 2021, Plaintiff filed three motions to compel: (1) a motion to compel discovery responses to Plaintiff's Second Requests for Production of Documents, (Dkt. No. 38); (2) a motion to compel interrogatory responses, (Dkt. No. 39); and (3) a motion to compel responses to requests for admission, (Dkt. No. 40). Defendants oppose Plaintiff's motions. (Dkt. No. 44). Plaintiff filed an omnibus reply. (Dkt. No. 45).

Plaintiff's motions are fully briefed and ripe for disposition.

## Legal Standard

Parties to civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" so long as the information is "proportional to the needs of the case..." Fed. R. Civ. P. 26(b)(1). The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop his or her case. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) (noting that "the discovery rules are given 'a broad and liberal treatment'"). The court "must limit the frequency or extent of discovery ... if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them].") (internal quotation marks omitted). To enforce the provisions of Rule 26, under Federal Rule of Civil Procedure 37, a "party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## Analysis

### *Plaintiff's motion to compel discovery responses to Plaintiff's Second Requests for Production of Documents. (Dkt. No. 38).*

Plaintiff challenges Defendants' responses to request Nos. 1, 4, and 5. The pertinent requests and responses read:

> 1. Produce the personnel file for all employees of the Diocese of Charleston that have been credibly accused of sexual abuse of children and/or adults including, but not limited to, priests, other religious employees, and/or non-religious employees of the Diocese from 1950 to present.
>
> Response: The Diocese objects to producing any document regarding priests who have been listed as credibly accused other than the alleged abuser, whose file has been produced. The Diocese further objects to production of documents regarding other employees who may have been accused of misconduct. The Diocese objects to production of any document that postdates the alleged abuse, which took place sometime between 1960 and 1966, because such documents are irrelevant, immaterial, inadmissible, and outside the proper scope of discovery.
>
> . . .
>
> 4. Produce a copy of the late Rev. Roy Aiken's personnel file.
>
> Response: The Diocese objects to Request No. 4. Roy Aiken, who died in July, 2006, was pastor of parishes in Walterboro and Hampton between 1952 and 1966 (with a year studying at Catholic University in 1964) at the time plaintiff alleges she was abused in Charleston. The Diocese further objects because Plaintiff seeks production of documents that are not relevant to the claims or defenses in this case, and are not proportionate to the needs of the case. The requested documents are simply outside the proper scope of discovery.
>
> 5. Produce a copy of former Vicar General of the Diocese of Charleston [S.M.]'s personnel file.
>
> Response: The Diocese objects to Request No. 5. S.M. was not ordained as a priest until 1969 and was in seminary in Maryland and pursuing additional studies in Rome during the time Plaintiff claims to have been abused in Charleston. The Diocese further objects because Plaintiff seeks production of documents that are not relevant to the claims or defenses in this case, and are not proportionate to the needs of the case. The requested documents are simply outside the proper scope of discovery.

(Dkt. No. 38-2 at 3-4) (emphasis removed).

After careful consideration of the parties' arguments, the Court finds that requests Nos. 1, 4, and 5 are relevant to Plaintiff's claims and, as detailed below, grants Plaintiff's motion. *See* Fed. R. Civ. P. 26(b)(1).

As it relates to request No. 1, in her motion Plaintiff attaches a 1963 letter between

Monsignor Bernardin and Reverend Reh, then Bishop of Charleston, discussing McLean and indicating a copy of the letter would be held in "the secret files." (Dkt. No. 38-7). Plaintiff also attaches a 1960 letter between Bishop Hallinan and Cardinal Bernardin indicating that both individuals were aware that, over the course of four years, McLean may have abused a minor. (Dkt. No. 38-8). These letters support Plaintiff's argument that individuals in the Diocese were aware of McLean's alleged wrongful actions and support a finding that the personnel files of other individuals in the Diocese of Charleston credibly accused of sexual abuse, and dating back into the 1950s, could shed light on to how the potential civil conspiracy functioned generally. As it relates to request Nos. 4 and 5, Plaintiff notes Defendants themselves list Rev. Roy Aiken as a diocesan priest with a credible allegation of child sexual misconduct against him. *See* (Dkt. No. 38-10 at 2). Plaintiff also demonstrates, through deposition testimony, that S.M. was abused by Rev. Aiken in the 1960s and that, once S.M. revealed this information to the diocese, the diocese provided S.M. with counseling and coaching. (Dkt. No. 38-9 at 6-8). This information lends credence to Plaintiff's contention that the responses to requests Nos. 4 and 5 may contain relevant information regarding Plaintiff's civil conspiracy claim.

In sum, the Court **grants** Plaintiff's motion to compel discovery responses to Plaintiff's Second Requests for Production of Documents. (Dkt. No. 38). As it regards Request No. 1, however, the Court **limits** the timeframe for the request to 1950 through 1966.

### *Plaintiff's motion to compel interrogatory responses. (Dkt. No. 39).*

First, Plaintiff argues that Defendants have refused to comply with Fed. R. Civ. P. 33(b)(3) and (5) in responding to Plaintiff's interrogatories. Rule 33(b)(3) requires that each interrogatory "to the extent it is not objected to, be answered separately and fully in writing *under oath*." (Emphasis added). Rule 33(b)(5) states that the "person who makes the answers must sign them .

4

. . ." Plaintiff argues, and Defendants do not contest, that Defendants' answers are unsigned and do not indicate that they are under oath.

The Court grants Plaintiff's motion on the above point and requires that Defendants, in accordance with the deadlines indicated *infra*, comply with Rule 33 in its entirety, including subjections (b)(3) and (b)(5). *See Ballard v. Union Carbide Corp.*, No. 2:11-cv-00366, 2012 U.S. Dist. LEXIS 79853, at *19 (S.D.W. Va. June 8, 2012) (rejecting unverified responses to interrogatories signed by plaintiffs' counsel on "behalf of all Plaintiffs" and requiring plaintiffs submit verified interrogatories to defendant).

Second, Plaintiff takes issue with Defendants' refusal to respond to interrogatories Nos. 8 and 9. These interrogatories ask for information regarding all priests in the Diocese of Charleston, from 1950 to today, that have fathered children during their priesthood and the mothers of the children that the priests have fathered. (Dkt. No. 39-2 at 4-5). Defendants refused to answer these interrogatories on the basis that they were irrelevant to any claim or defense and disproportionate to the needs of this case. (*Id.*).

As it relates to Interrogatories Nos. 8 and 9, the Court **grants** Plaintiff's motion, but **limits** the time frame for responding to these interrogatories to 1950 through 1966. In her motion, Plaintiff attaches documents that tend to show that the Defendant Diocese was aware of priests, including McLean, fathering children, and providing child support payments for those children. (Dkt. No. 39-3). This documentation supports a finding that the answers to Interrogatories Nos. 8 and 9 may be relevant to Plaintiff's civil conspiracy claim. Accordingly, Defendants must answer both interrogatories.

Plaintiff next takes issue with Defendants' responses to Interrogatories Nos. 6, 7, 10, and 11. In answering each of these interrogatories, Defendants cite Rule 33(d) and direct Plaintiff "to

5

its priest file regarding Fr. McLean, which has been produced."[1] Plaintiff argues that these interrogatories are "simple[]" and asks the Court "to order the Defendant to answer these requests instead of copying and pasting elusive and intentionally, misleading and generic responses." *See* (Dkt. No. 39 at 3-4).

The Court denies Plaintiff's motion as to Interrogatories Nos. 6, 7, 10 and 11. Defendants have answered these interrogatories in accordance with Rule 33(d)[2] and Plaintiff does not substantively dispute this. Further, Plaintiff has put forth no concrete basis on which the Court could find that "relevant, responsive documents exist and are being withheld." *Brown-Thomas v. Hynie*, No. 1:18-cv-02191-JMC, 2021 U.S. Dist. LEXIS 52218, at *8 (D.S.C. Mar. 19, 2021) (citing *Susko v. City of Weirton*, No. 5:09-cv-0001, 2011 U.S. Dist. Lexis 3134, at *4 (N.D.W. Va. Jan. 12, 2011)); *Id.* (noting that "[m]ere speculation that the documents exist is insufficient to compel production"); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. 2010) ("[E]ven an informed suspicion that additional non-privileged documents exist . . . cannot alone support an order compelling production of documents.").

---

[1] Interrogatory No. 6 asks Defendants to "state the names of the victims and the details of the incidents of all persons known to you that have been sexually abused by Frederick McLean and indicate the date you learned of such activity." Interrogatory No. 7 asks Defendants to "[s]tate what you knew about Frederick McLean's background, personal life, and criminal history before he was incardinated into the Diocese of Charleston." Interrogatory No. 10 asks "Why did Frederick McLean take a leave of absence from the Diocese of Bridgeport around the year 1948?" and Interrogatory No. 11 asks "Why was Frederick McLean transferred from St. John parish in North Charleston?" (Dkt. No. 39-2 at 4-5).

[2] "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Fed. R. Civ. P. 33(d).

In sum, Plaintiff's motion to compel interrogatory responses, (Dkt. No. 39), is **granted** to the extent that (1) Defendants must respond to Interrogatories Nos. 8 and 9 for the years 1950 through 1966 and (2) Defendants must—as to all answers—comply with Rule 33(b)(3) and (5). Plaintiff's motion is otherwise denied.

### *Plaintiff's motion to compel responses to requests for admission. (Dkt. No. 40).*

First, Plaintiff takes issue with Defendants' responses to Plaintiff's First Requests for Admission Nos. 1 and 3. Plaintiff's requests and Defendants' answers read:

> 1. Admit that Frederick McLean was named by the Defendants as a Priest with a least one credible allegation of child sexual misconduct or abuse within the Diocese of Charleston.
>
> Response. The Diocese admits that Fr. Frederick McLean is listed as a priest credibly accused of sexual misconduct with a minor. Any remaining portion of Request No. 1 are denied.
>
> . . .
>
> 3. Admit that McLean took a leave of absence from the Diocese of Bridgeport [Connecticut] in 1948.
>
> Response. Denied.

(Dkt. No. 40-2) (emphasis removed). As it regards Defendants' response to Request No. 1, Plaintiff states that "Defendants['] own production of documents" shows the response is "an egregious denial." (Dkt. No. 40 at 3). As to Defendants' response to Request No. 3, Plaintiff cites the "Holzberg Report" and states that because this report indicates McLean took a leave of absence from the Diocese of Bridgeport, Defendants cannot rightfully "deny this." (*Id.* at 2) ("How can Defendants 'deny' this? They employed this priest directly from the Bridgeport Diocese and must have had to do some due diligence to hire McLean.").

The Court denies Plaintiff's motion on the above points. As it relates to Request No. 1, the Court finds that Defendants are correct that "The Diocese has responded appropriately" and that

7

Plaintiff's mere dissatisfaction with the response does not render it improper. *See Foretich v. Chung*, 151 F.R.D. 3, 4-5 (D.D.C.1993) (explaining that an answer to a request for admission may be insufficient if it is not specific or the explanation for the refusal to admit lacks detail, but not because it may be contrary to the evidence); *see also* (Dkt. No. 45 at 7-8) (arguing that, per *Plaintiff's* reading of the record, the "documents contained within McLean's personnel file . . . prove beyond any doubt that Defendants knew at least in 1960 that McLean was sexually abusing children in the Diocese of Charleston"). As it regards Request No. 3, the Court likewise finds Defendants' response proper. (Dkt. No. 44 at 7) (noting the information Plaintiff seeks is likely "possessed by the Diocese of Bridgeport, Connecticut" and that the "Diocese ha[s] made a reasonable inquiry into this matter and cannot admit or deny this Request because it lacks sufficient knowledge or information"); *see United States v. Operation Rescue Nat.*, 111 F. Supp. 2d 948, 968 (S.D. Ohio 1999) (noting that "[c]ourts have concluded that the ability to move to determine the sufficiency of answers and objections does not entitle one to request that a court determine the accuracy of a denial"); *Lakehead Pipe Line Co. v. American Home Assurance*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("Rule 36(a) does not authorize a Court to [render prospectively] determinations concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence").

Last, Plaintiff takes issues with Defendants' responses to its Second Requests for Admission Nos. 9 and 25. The relevant requests for admission and responses read:

> 9. Admit that in early August 1962 Father Hubacz reported to Cardinal (then Monsignor) Bernardin that he had received a complaint about Father McLean exposing himself to a 10-year old girl whom he had taken for a ride in his car. (Roe1818_00480).
>
> Response: The Diocese cannot admit or deny Request No. 9. The Diocese cannot

8

> investigate the matters contained in the document because Bishop Hallinan, Fr. McLean, Fr. Hubacz, and Cardinal Bernardin are all deceased. To the extent a specific response is determined to be required, the request is denied.
>
> . . .
>
> 25. Admit that those documents, as produced by Defendants, Roe1818_00001-Roe1818_00657 are copies of the official records of the Diocese of Charleston, South Carolina.
>
> Response. The Diocese admits only that it produced file materials in its possession regarding Fr. Frederick McLean. The Diocese denies the remainder of Request 25.

(Dkt. No. 40-4 at 4, 9) (emphasis removed). As to request No. 25, Plaintiff argues Defendants' sheer production of documents renders them "official." (Dkt. No. 40 at 3). As to request No. 9, Plaintiff argues, "How can the Defendants, who produced this document to Plaintiff deny that this document *says what it says*?" (*Id.* at 5) (emphasis added).

The Court denies Plaintiff's motion on the above points. As it concerns above request No. 9, Defendants are correct that Plaintiff is not asking Defendants "admit that th[e] document says what it says"—instead, Plaintiff is asking Defendants to admit the truth of the information in the documents. *See* (Dkt. No. 44 at 8) ("All the diocesan personnel mentioned in this document are dead. There is no one to interview to ascertain the accuracy of these statements . . . ."). As to request No. 25, the Court finds no deficiency in Defendants' response. *See* (*id.*) (arguing that "[a]t an appropriate time, the Diocese may stipulate to the authenticity of particular documents pursuant to Fed. R. Evid. 901(8). However, the Diocese cannot admit the truth of the hearsay statements contained in the documents. Therefore, its denial is entirely proper"); *Lakehead Pipe Line Co.*, 177 F.R.D. at 457 (noting "defendants take issue with the Plaintiffs' Responses to Requests which sought admissions as to the authenticity of certain documents, and as to accuracy of the Defendants' interpretation of the content and/or meaning of the documents. In response, the Plaintiffs have, in almost all cases, admitted to the authenticity of the documents, but they have

9

objected to the Defendants' effort to obtain, by implication, a synoptic characterization of the documents, or a gloss as to their intendment, on the specific ground that the documents speak for themselves. In our considered view, *such qualified Responses are appropriate . . . because they effectuate the purposes of Rule 36*") (emphasis added and internal citations omitted)[3]; *see also id.* at 458 (rejecting defendants' attempt to "have the Plaintiff ratify what are, in essence, the legal conclusions that the Defendants have attached to the operative facts of the case" and holding that "a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate").

In sum, the Court **denies** Plaintiff's motion to compel responses to requests for admission. (Dkt. No. 40).

As to Plaintiff's requests for attorney's fees, Rule 37(a)(5)(A) provides that if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Regarding Plaintiff's motion to compel discovery responses to Plaintiff's Second Requests

---

[3] The *Lakehead Pipe Line Co.* court elaborated: "In so holding, we recognize that Requests which seek opinions of fact, or of mixed fact and law, are appropriate, since contention Requests were encompassed within Rule 36, by amendment, in 1970. Nevertheless, a document has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion. Notably, the Plaintiffs' responses to these Requests included an admission, or a denial, so that the Defendants were not deprived of a competent response to their Request. Specifically, by the Plaintiffs' Response, the Defendants are on notice that their interpretation of a given document is inconsistent with the Plaintiffs' construction and, if the document is critical to the case, the evidence that would be required to prove the document's meaning. The quintessential function of Requests for Admissions is to allow for the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute. This function has been faithfully served by the Plaintiffs' responses." *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 457 (D. Minn. 1997).

for Production of Documents, (Dkt. No. 38), and Plaintiff's motion to compel interrogatory responses, (Dkt. No. 39), the Court declines to award attorney fees under Rule 37 given Defendants' disputes with Plaintiff were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A) ("the court must not order this payment if: ... (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust"); *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. Appx. 586, 599 (4th Cir. 2009) ("A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'").

## Conclusion

For the reasons stated above, and as detailed herein, the Court: (1) **grants** Plaintiff's motion to compel discovery responses to Plaintiff's Second Requests for Production of Documents, (Dkt. No. 38); (2) **grants in part and denies in part** Plaintiff's motion to compel interrogatory responses, (Dkt. No. 39); and (3) **denies** Plaintiff's motion to compel responses to requests for admission, (Dkt. No. 40). On or before September 29, 2021, Defendants shall supplement their discovery responses as detailed herein.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

September 20, 2021
Charleston, South Carolina

11